UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-20-FDW

| | |
|---|---|
| AJANAKU MURDOCK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FNU THOMPSON, et al., )<br>)<br>Defendants. )<br>_____) | **ORDER** |

,
**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 6).

**I.     BACKGROUND**

*Pro se* Plaintiff filed a civil rights suit pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred at the Lanesboro Correctional Institution where he still resides. He names as Defendants Sergeant/Mail Carrier Thompson, Mailroom Employees E. Paul and D. Houser, Superintendent Mitchell, Richmond Unit Secretary McAllister, Administrative Assistant II Wesley Marbry.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff was not allowed to correspond with his brother, Maurice Murdock, who was housed in Lanesboro C.I. medium beginning in September 2013. Plaintiff brought this to the attention of his case manager at the time, Ms. Treadaway. Together, they notified Mitchell but Plaintiff received no relief. Treadaway advised Plaintiff to write a grievance which he did. However, he was never allowed to write to his brother while he was housed on the medium custody side of Lanesboro even though they are not gang members, S.T.G., or co-defendants.

1

Around February 2014, Plaintiff made an attempt to send registered or certified legal mail but he was not permitted to do so because he was indigent. Plaintiff showed "every one of the defendants" in this case the mandatory steps he had to take in order to properly file a speedy trial motion. (Doc. No. 1 at 5). Plaintiff was constantly refused so he wrote a grievance stating that administrators were hindering his access to the judicial system. This was "swept under the rug" like all of his grievances. (Doc. No. 1 at 5). Because his access to the courts was hindered, and the court did not or could not honor his speedy trial motions, he was forced to plea out and, on January 27, 2015, received a 20-33 month consecutive sentence.[1] This has caused Plaintiff a great deal of emotional and mental stress.

Throughout this time, Secretary McAllister has refused to give Plaintiff adequate notary services that are mandated by the law by refusing to put her seal on his "legal papers." (Doc. No. 1 at 6). She has also tossed letters of Plaintiff's in the trash that Plaintiff was sending to family and friends. McAllister refused to mail books home because Plaintiff was indigent and he was forced to donate them or throw them away.

In late 2015, Plaintiff was complaining to publishing companies that he was not receiving their material. They responded that the magazines and other materials were being sent, but Plaintiff had not received any of them except one magazine from "Thee BLVD" which is a "prison-friendly organization." (Doc. No. 1 at 6). The publishers also called the mailroom to see why Plaintiff was not receiving their materials.

Because of Plaintiff's grievances and "constant complaints" about his mail situation, the

---

[1] The NC DPS online records indicate that Plaintiff was convicted on January 27, 2015, of intimidating a witness and possession of a schedule II controlled substance, case number BD-005. It is characterized as a "future" and "active" sentence. See Fed. R. Ev. 201; https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0634508&searchOffenderId=0634508&listurl=pagelistoffendersearchresults&listpage=1.

"adminstrators" who are in control of the mail kept his mail from going out. (Doc. No. 1 at 7). Plaintiff was placed on a highly structured and restrictive gang lockup unit even though he is not a gang member and was told that all mail has to go out of the facility unsealed. Plaintiff sent Captain Mims, who is the supervisor of all gang activity at Lanesboro, a request on February 25, 2015. She responded that his mail was being sent out sealed like it should be. The following month, Captain Aaron sent out a memo delegating officers to pick up and pass out mail at specific times which caused more confusion.

When Plaintiff was no longer indigent, he was allowed to send out his mail certified. He did so because his loved ones were not receiving his mail. Plaintiff then began having more problems with Defendants Houser and Paul, who were holding some of his mail in the mailroom, which they admitted. They were also throwing away certified mail receipts and sending mail out as regular mail even though Plaintiff had paid. When Defendant Mabry got involved, he tried to lie for them, and said that the policy was being revised and this is now how they handle certified mail at the facility. Plaintiff submitted all of these statements through Edith Fultz and Unit Manager Lemon who cannot now find the copies Plaintiff submitted. Mabry changed the policies himself without having first sent a memo through the prison and no longer allows certified mail unless it is legal, even if inmates have the money to pay for certified mail.

The Defendants have worked together to violate Plaintiff's First and Fourteenth Amendment rights which have caused him to have a lengthened prison sentence as well as mental and emotionally distress. Plaintiff alleges that Mitchell was aware of his grievances and issues dealing with the violations of his mail and did nothing to stop it.

Plaintiff has lost property and special items that can never be replaced, received a consecutive sentence due to being denied access to the courts, and suffered mental and emotional

distress as a result.

He seeks injunctive relief for "the entire prison population who needs to send legal mail as certified even though they're indigent." (Doc. No. 1 at 13). He also seeks compensatory damages for mental and emotional suffering, punitive damages, and a jury trial.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must

4

still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III.  DISCUSSION

**(1)  Suit on Behalf of Others**

A prisoner cannot file a lawsuit on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").

Plaintiff claims to be seeking relief on behalf of the entire prison population, however, his *pro se* incarcerated status prevents him from doing so. Accordingly, to the extent he seeks to seek relief on behalf of others, this claim is dismissed.

**(2)  Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel

or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

The body of the Complaint addresses several individuals who are not named as Defendants. These claims will be dismissed without prejudice.

**(3)** **Access to courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus pursuant to 28 U.S.C. § 2254, and a complaint under the Civil Rights

6

act, § 1983. Muhammad v. Close, 540 U.S. 749, 750 (2004). "Habeas corpus, and not § 1983, is the exclusive federal remedy for state prisoners seeking actual release from confinement," Griffin v. Baltimore Police Dep't, 804 F.3d 692, 694–95 (4th Cir. 2015) (citing Preiser v. Rodriguez, 411 U.S. 475, 487–90 (1973)), and "requests for relief turning on circumstances of confinement may be presented in a § 1983 action," Muhammad, 540 U.S. at 750. Some cases are "hybrids," where a prisoner seeks damages, which are unavailable through a habeas action, but on allegations that either imply the invalidity of an underlying conviction or of a particular ground for denying relief short of serving the maximum term of confinement. Id. To address this situation, the Supreme Court held in Heck v. Humphrey, 512 U.S. 477 (1994), that:

> to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus….

Id. at 485.

For Heck to bar a § 1983 claim, (1) "a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence," Heck, 512 U.S. at 487, and (2), the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practically sought habeas relief while in custody, Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015).

Plaintiff alleges that Defendants would not allow him to send his legal mail certified and refused notary services. As a result, he was forced to plea out in a criminal case and received a 20-33 month consecutive sentence that is longer than what he would have received if he had been able to send his speedy trial motions to the court. Plaintiff does not allege that he was deprived of

7

counsel in the criminal proceeding, nor does he explain why his alleged inability to file a *pro se* motion for speedy trial forced him to plead guilty and receive a consecutive sentence. See Cochran, 73 F.3d at 1310 (a prisoner making a claim that prison officials infringed his right of access to the courts cannot rely on conclusory allegations). Moreover, this claim directly challenges the validity of Plaintiff's guilty plea and 20-33 month sentence and he is presently in NC DPS custody. Therefore, this claim is not cognizable, and Plaintiff's claim that he has been deprived of access to the courts will be dismissed.

**(4)     Mail**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

As a general rule, prisoners have a constitutionally protected interest in their incoming and outgoing mail correspondence. Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir.2005) (citing Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999) (citations omitted)). Persons outside of prison also have an interest in corresponding with prison inmates. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989). Prison officials may, however, impose restrictions on prisoner correspondence if

8

those restrictions are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). When evaluating the constitutionality of prison regulations, courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citations omitted).

Plaintiff's allegations that Defendants Houser, Thompson, Mabry, McAllister, and Paul, refused to authenticate legal mail properly, threw letters away, and refused to send certified legal due to Plaintiff's indigent status have stated a plausible claim for violation of his access to the mail. However, Plaintiff's allegation that he was not allowed to correspond with his brother, another Lanesboro C.I. inmate, fails to state a claim for relief. See generally Turner, 482 U.S. at 78 (rule permitting correspondence between immediate family members at different institutions or addressing legal matters, but permitting other inmate correspondence only if it was in the best interest of the parties, was logically connected to legitimate security concerns); see, e.g., Tompkins v. Dep't of Corr., 2008 WL 717719 (E.D.N.C. March 17, 2018) (dismissing as frivolous plaintiff's claim that he was denied requests for inmate-to-inmate correspondence where plaintiff failed to show that he followed the correct procedure).

This claim will be permitted to proceed against Defendants **Houser, Thompson, Mabry, McAllister, and Paul** but will otherwise be dismissed.

**(5)** **Equal Protection**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271 (1979), but "keeps governmental

decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 319–320 (1993). The Fourth Circuit does not recognize prisoners as "a suspect class." Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. See Morrison, 239 F.3d at 654–55. In a prison context, therefore, the court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." Shaw v. Murphy, 532 U.S. 223, 225 (2001). This deferential standard applies "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny;" however, this more deferential review does not ignore the concerns that justify application of a heightened standard outside of the prison context. Morrison, 239 F.3d at 655-56.

Plaintiff cites to the Equal Protection Clause and appears to allege that he was treated differently because of his indigent status. Plaintiff's conclusory allegations coupled with his citation to the Equal Protection Clause fail to state a claim. To the extent he attempts to attach allegedly disparate treatment to indigent versus non-indigent inmates, this does not support an

10

equal protection violation. See Maher v. Roe, 432 U.S. 464, 471 (1977) ("this court has never held that financial need alone identifies a suspected class for purposes of equal protection analysis.")

Therefore, Plaintiff's equal protection claim will be dismissed.

**(6) Due process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

**(a) Property**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). However, post-deprivation remedies do not satisfy the due process requirement where the deprivation complained of is effected pursuant to an established state procedure rather than a random, unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982).

Under North Carolina law, an action for conversion will lie against a public official who

wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff contends that McAllister thew some of Plaintiff's letters to family and friends in the trash, refused to mail books home because Plaintiff was indigent and he was forced to donate them or throw them away, and that Houser and Paul threw away some certified mail receipts even though Plaintiff had paid for certified mail.

It appears that the alleged loss of Plaintiff's property was random and unauthorized rather than the result of an established state procedure. Adequate post-deprivation remedies exist for Plaintiff's alleged property loss, so there is no legal theory which would support this claim. See, e.g., Smith v. Ledford, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), *aff'd,* 203 Fed. Appx. 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion).

Therefore, Plaintiff's claims that various pieces of property were mishandled or thrown away by various members of staff will be dismissed.

**(b) Classification**

A change in the conditions of a prisoner's confinement that does not exceed the scope of the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472 (1995).

Plaintiff contends that he was placed in highly restrictive housing even though he is not a gang member. His vague and conclusory claim that his placement on restrictive housing is insufficient to state a constitutional violation and will be dismissed.

**(c) Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). A prisoner's "access to and participation in the prison's grievance process are not constitutionally protected…." Taylor v. Lang, 483 Fed. Appx. 855, 857 (4th Cir. 2012).

Plaintiff appears to allege that the repeated denial of his grievances denied him of his constitutional rights. There is no right to a prison grievance procedure so this claim will be dismissed as frivolous.

**(7)    Supervisory liability**

A supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff contends that Defendant Mitchell was informed on numerous occasions of the various constitutional violations and did nothing to alleviate the problems. This claim is too vague and conclusory to state a claim for supervisory liability at this time and will be dismissed.

**IV.    CONCLUSION**

For the reasons stated herein, the Complaint is sufficient to proceed against This claim will be permitted to proceed against Defendants **Houser, Thompson, Mabry, McAllister, and Paul**

for infringing his right to send and receive mail. The remaining claims are dismissed as frivolous and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to cure the deficiencies identified in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's § 1983 claims against Defendants Houser, Thompson, Mabry, McAllister, and Paul for infringing his right to send and receive mail survive initial review under 28 U.S.C. § 1915.

2. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

3. Plaintiff shall have 14 days in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

4. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), and a new Section 1983 complaint form to Plaintiff.

5. **IT IS FURTHER ORDERED THAT** the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Houser, Thompson, Mabry, McAllister, and Paul** who are current or former employees of NC DPS.

Signed: August 13, 2018

*[signature: Frank D. Whitney]*

Frank D. Whitney
Chief United States District Judge